IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CAROL A. LOGUE,

    Plaintiff,

v.                                                    CASE NO. 1:12-cv-125-GRJ

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

    Defendant.

_____/

## O R D E R

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for supplemental security income pursuant to Title XVI of the Social Security Act (the Act). (Doc. 1.) The Commissioner has answered, and both parties have filed briefs outlining their respective positions. (Docs. 8, 15, 16.) The parties have consented to have the undersigned U.S. Magistrate Judge conduct all proceedings in this case. (Docs. 10, 12.) For the reasons discussed below, the Commissioner's decision is **REVERSED AND REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits under Title II of the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this case.

Social Security Act in July 2007, alleging disability since February 23, 2007, due to fibromyalgia, back and neck pain, arthritis, nad migraines. (R. 20, 153.) Plaintiff's application was denied initially and upon reconsideration. (R. 20, 66-70.) An administrative hearing was held before an Administrative Law Judge ("ALJ") on May 28, 2010. On June 15, 2010, the ALJ issued a written decision finding that Plaintiff was not disabled. (R. 20-27.) The Appeals Council denied Plaintiff's request for review (R. 1-7) and she filed this Complaint on June 12, 2012. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole,

---

[2] *See* 42 U.S.C. § 405(g) (2000).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9] First, if a claimant is working at a substantial gainful activity, he is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does

---

[5] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[12] Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[13] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive

---

[11] 20 C.F.R. § 404.1520(c).

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[16] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

---

[17] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[18] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[19] Walker, 826 F.2d at 1003.

[20] Wolfe, 86 F.3d at 1077-78.

[21] *See id.*

## III. SUMMARY OF THE RECORD

A. **Medical History - Mental Impairments**

Plaintiff saw Dr. Larry Rooks of the Shands Clinic in 2007. At her first visit on July 5, 2007, he diagnosed her with chronic pain and depression/anxiety, and recommended treatment for pain management and that she follow up with her psychiatrist. (R. 310.) On August 2, 2007, Dr. Rooks diagnosed chronic depression, anxiety with somatization, chronic pain secondary to fibromyalgia and degenerative disk disease. He prescribed Prozac and limited her Xanax prescription. (R. 311.)

Dr. Rooks referred Plaintiff to Dr. Wilda Murphy at Southeastern Rehabilitation Medicine, and she treated with her from 2007 to 2009. On August 24, 2007, Plaintiff had her initial office visit with Dr. Murphy, where she complained of whole body pain with associated numbness, burning, and tingling sensations as well as arthritis-related pain in her joints. Dr. Murphy diagnosed chronic pain syndrome, generalized myalgias, chronic neck and low back pain, knee pain, history of migraine headaches, rule out IBS, and a history of depression, currently noncompliant with Prozac. With regard to depression, Dr. Murphy encouraged Plaintiff to comply with treatment with Prozac by filling her prescription. (R. 285-88.) At her October 10, 2007 follow up visit, Dr. Murphy again noted that Plaintiff was non-compliant with her anti-depressant prescriptions, and encouraged Plaintiff to follow up with mental health treatment. (R. 360.)

At her February 19, 2008 follow up with Dr. Murphy, Plaintiff complained of severe pain. She was instructed to follow up at Meridian and fill her prescription for the

anti-depressant Lexapro. Dr. Murphy noted that Plaintiff was instructed to keep her appointments at Meridian as she missed her last one. (R. 352.) In July 2009, Dr. Murphy, noted noncompliance with mental health treatment at Meridian. (R. 415.) In November 2008, Plaintiff reported that medication was not helping her pain. Dr. Murphy again noted noncompliance with mental health treatment. (R. 411-13.)

At her final visit with Dr. Murphy on January 23, 2009, Dr. Murphy recommended discontinuing all medications (Ultram, Daypro, and Neurontin) because multiple medication trials were ineffective. Dr. Murphy encouraged Plaintiff to follow up with her primary care provider, walk regularly, and use massage therapy. Dr. Murphy also noted that Plaintiff was noncompliant with her mental health treatment at Meridian. (R. 411.)

The record contains two treatment notes from Meridian Behavorial Healthcare, one dated August 16, 2007, and one dated August 21, 2007. At the first visit, she refused medical services but was amenable to therapy. At her second visit, her GAF had improved from 40 to 45 and it was noted that she would follow up with therapy. (R. 272-84.)

Dr. Alejandro Vergara completed a psychiatric review technique form on November 5, 2007, wherein he opined that Plaintiff did not have a severe mental impairment and that her main limitations appeared to be physical in nature. He did, however, recommend continuing with outpatient counseling at Meridian. Dr. Vergara determined that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. (R. 316-29.) Gary Buffone, Ph.D., completed a psychiatric review technique form on April 11, 2008

and came to the same conclusions as Dr. Vergara; that Plaintiff did not have a severe mental impairment, had only mild functional limitations; and that her limitations were primary physical in nature. (R. 363-75.)

**B.     Relevant Hearing Testimony**

Plaintiff testified that she suffered from anxiety and panic attacks, and that she was on Xanax for these conditions but had not returned to the doctor to refill her prescription. (R. 38.) She testified that of all her conditions, her depression and the pain in her neck and her shoulder caused her the most difficulty. Plaintiff testified that she is unable to do typical household chores and spends the day in bed or on the couch. (R. 39.)

**C.     Findings of the ALJ**

The ALJ found that the Plaintiff had the severe impairments of chronic pain syndrome and generalized myalgias. He concluded that she had the residual functional capacity to perform light work, with additional postural and environmental limitations. The ALJ found that Plaintiff could perform her past relevant work as a secretary, which was at the sedentary level and therefore consistent with her residual functional capacity. (R. 20-27..)

## IV. DISCUSSION

Plaintiff raises two issues on appeal: (1) whether the ALJ erred at step two by not finding that Plaintiff suffered from the severe impairments of depression and fibromyalgia; and (2) whether the ALJ erred by failing to consider Plaintiff's impairments

in combination. The Court is unable to properly analyze these arguments because the ALJ failed to evaluate the Plaintiff's documented mental impairments in accord with the Commissioner's regulations and caselaw in the Eleventh Circuit. Therefore, the decision of the ALJ is due to be reversed and remanded.

The Commissioner's regulations require the ALJ to evaluate mental impairments using the procedure set forth in 20 C.F.R. § 404.1520a. The ALJ must either complete a Psychiatric Review Technique Form (PRTF) and append it to his decision or otherwise incorporate the analysis into the decision. The analysis considers how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a-(c)(3-4). The Eleventh Circuit has held that:

> [T]he social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis in to his findings and conclusions. Failure to do so requires remand.

*Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (internal citations omitted). *See also Huddleston v. Astrue,* 2008 WL 2225697 (S.D. Ala. 2008) (reversing and remanding where ALJ failed to evaluate claimant's mental impairments in accord with 20 C.F.R. § 404.1520a by attaching a PTRF or otherwise incorporating his functional analysis); *Doss v. Astrue,* 2007 WL 4570551 (S.D. Ala. 2007) (*id.*); *Johnson v. Comm'r of Soc. Sec.*, 2008 WL 623218 (M.D. Ga. 2008) (*id.*); *Curry v. Astrue,* 2008 WL 161925 (S.D. Ala. 2008) (*id.*).

In this instant case, the medical records reflect that Plaintiff has been diagnosed

with mental impairments (depression, anxiety, post-traumatic stress disorder) by multiple healthcare providers and (though often non-compliant) has been prescribed anti-depressant and anti-anxiety medications for these disorders. Furthermore, at her hearing, Plaintiff testified that her depression was one of her most significant medical conditions. (R. 39.) As such, she presented at least a colorable claim of mental impairment. While the ALJ was not required to find that Plaintiff's mental impairments were severe, he was required to analyze her mental impairments in accord with the Commissioner's regulations and the holding of *Moore v. Barnhart*.

The ALJ failed to append conduct the appropriate analysis in his decision. Rather, the only mention of the PRTF factors are the ALJ's references to the analyses of state agency consultants Dr. Vergara and Dr. Buffone, who each completed PRTFs in 2008 and came to virtually identical conclusions: that Plaintiff had only mild functional limitations and did not have a severe mental impairment. (R. 26-27, 316-29, 363-76.) While the ALJ gave each of these opinions significant weight, his decision is devoid of any analysis of the required factors and thus does not satisfy the requirements of 20 C.F.R. § 404.1520a. *Volley v. Astrue*, 2008 WL 822192, at *19-20 (N.D. Ga. 2008) (rejecting Commissioner's argument that mere reference to state agency evaluations was sufficient).

Even assuming, *arguendo*, that the references to the state agency consultants' PRTFs somehow fulfilled the requirements of 20 C.F.R. § 404.1520a, these PRTFs were completed on April 11, 2008, more than two years prior to Plaintiff's administrative hearing on May 28, 2010. Therefore, "reliance on the PRTFs to establish Plaintiff's

mental limitations during [the two years prior to the hearing] would not be supported by substantial evidence." *Id.* at *20*.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is **REVERSED AND REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner so that the Administrative Law Judge may conduct further proceedings consistent with this Order, and to apply the special technique set forth in 20 C.F.R. § 404.1520a. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**DONE AND ORDERED** this 15th day of July 2013.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge